UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW BARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>HOUSING AUTHORITY OF THE CITY OF PASSAIC; VICTOR CIRILO; and PAMELA MITCHELL<br><br>    Defendants. | Civil Action No.:<br>2:22-cv-04511-WJM<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of the relationship between Andrew Barcia ("Plaintiff") and the Housing Authority of the City of Passaic ("PHA"), its former executive director, Victor Cirilo ("Cirilo"), and its current executive director, Pamela Mitchell ("Mitchell" and, together with Cirilo and PHA, "Defendants"), in connection with alleged retaliatory actions taken in response to whistleblowing activities. Before the Court is Defendants' motion (the "Motion") to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion for sanctions. ECF No. 4. For the reasons set forth below, Defendants' Motion is **DENIED**.

I.     BACKGROUND

    A.     **Factual Background**[1]

Plaintiff is a former director of maintenance at PHA and was responsible for the oversight of maintenance for each of PHA's residential buildings. Compl. ¶ 13. Plaintiff began his employment at PHA as a maintenance worker in 1981 and was appointed director of maintenance in 2009, a position he maintained until around 2018. *Id.* at ¶¶ 10, 12, 48. In August of 2009, based on information obtained from an unidentified coworker, Plaintiff informed Cirilo, who was at the time assistant director, and PHA's former interim director William Snyder, that Mitchell was knowingly submitting falsified work order reports to the Department of Housing and Urban Development ("HUD"). *Id.* at ¶ 14. Specifically, Plaintiff alleged Mitchell was submitting work order reports reflecting work done on tenants' behalf when no such work had been completed. *Id.* After Plaintiff notified his superiors, Mitchell was suspended for twenty days. *Id.* at ¶ 17.

---

[1] Unless otherwise stated, the following facts in this section are taken from the Complaint, ECF No. 1, and assumed to be true for purposes of this Opinion.

In March of 2013, Plaintiff again informed Cirilo that another employee, Roosevelt Johnson, was leaving work early without first seeking permission from Plaintiff as his supervisor. *Id.* at ¶ 19. A grievance hearing was held where a union representative became very agitated with Plaintiff and physically threatened him. *Id.* at ¶ 21. During the meeting, Plaintiff mentioned that employing Johnson, whose daughter was a PHA commissioner, was a violation of the conflict of interest provision of HUD. *Id.* at ¶ 23. Plaintiff alleges Cirilo sided with the grievant and "belittled Plaintiff as a result of his whistleblower efforts." *Id.* at ¶ 22. Afterwards, Johnson allegedly threatened to have Plaintiff fired, saying "[h]e's going to be out of here now." *Id.* at 24. Plaintiff alleges Cirilo took no corrective actions. *Id.*

Sometime in 2013, PHA began reviewing bids for construction companies to conduct repairs in its buildings. *Id.* at ¶ 26. One of the companies was Saar Construction Inc. ("Saar"), which had previously done work for PHA. *Id.* at ¶ 28. Although Saar was not the lowest bidding company, it was nonetheless awarded the contract after the lowest bidder was found to not be in compliance with the associated requirements. *Id.* at ¶ 29. Plaintiff strongly advised Cirilo against awarding the contract to Saar because he believed their previous work was "unsafe, shoddy, hazardous, and did not meet PHA standards." *Id.* at ¶ 30. Cirilo ultimately ignored Plaintiff's recommendations. *Id.* at ¶ 32. Plaintiff alleges that Saar was awarded the contract because its owner was a friend of PHA's chairman and the city council president. *Id.* at 33. Saar's contract was renewed until June of 2015. *Id.* at ¶ 34. In December of 2014, Plaintiff reported to Cirilo that another employee named Hector Lora was fraudulently recording his time. *Id.* at ¶ 38. Specifically, Lora would allegedly sign his logbooks for an entire shift, but only be on the premises for two hours. *Id.* at ¶ 39. Plaintiff alleges Cirilo took no actions against Lora and prevented Plaintiff from receiving copies of recordings to verify Lora's alleged misconduct. *Id.* at ¶ 40.

Plaintiff also alleges that in February of 2013, Cirilo verbally abused him over the phone and threatened to remove him from his position for Plaintiff's alleged failure to answer Cirilo's phone call during a snowstorm. *Id.* at ¶ 40. In March of 2015, Roosevelt Johnson contacted his daughter, a PHA commissioner, to complain of his inability to reach Plaintiff. *Id.* at ¶ 44. Plaintiff alleges Cirilo was aware of this alleged harassment and did not discipline Johnson. *Id.* In October of 2016, Cirilo placed Plaintiff on administrative leave for two years with pay. *Id.* at ¶¶ 45-46. Despite Plaintiff's numerous requests for an explanation as to why he was placed on leave, Cirilo allegedly never provided one to him. In October of 2018, after Cirilo had left his position as executive director of the PHA, Plaintiff was notified in writing that he was expected to return to work, however, he was no longer the director of maintenance and his salary was reduced by approximately $20,000.00. *Id.* at ¶¶ 47-49. Plaintiff alleges "[o]ther PHA employees who were in supervisory positions but were late demoted, did not receive a salary reduction as Plaintiff did." *Id.* at ¶ 50. In sum, Plaintiff alleges that Cirilo retaliated against Plaintiff by: "(1) scolding him in public, verbally abusing him and permitting others to verbally abuse Plaintiff; (2) not permitting him to attend regularly scheduled manager meetings; (3)

2

refusing to grant Plaintiff any salary increases for over 7 years. . . (4) refusing to approve performance bonuses for Plaintiff. . . (5) placing him on administrative leave for 2 years while providing him with no justifiable reason for doing so; (6) taking away his position as Director of Maintenance; (7) reducing his salary while other minority[2] PHA employees' salaries which were similarly situated were not reduced; and, (8) retaliating against his wife, Linda Colon, a long standing PHA employee." *Id.* at ¶ 42.

### B. Procedural History

Plaintiff originally filed a nearly identical complaint on September 20, 2016 in the Superior Court of New Jersey in Passaic County ("State Matter"), against the same parties except for Pamela Mitchell.[3] Def. Mot. Ex. B. The complaint similarly asserts violations of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 39:19-1, breach of employment contract, and violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12. *Id.* On January 16, 2018, Plaintiff and Defendants PHA and Cirilo filed a voluntary stipulation of dismissal without prejudice that provided Plaintiff the right "to re-file his complaint within sixty (60) days of Notice upon the successful appeal of the *Melody Villanueva-Arroyo v. Housing Authority of the City of Passaic et al.* matter, Docket number PAS-L-974-15." *Id.* at Ex. A. Defendants in State Matter subsequently filed a motion to dismiss the complaint with prejudice on July 12, 2021, which was later withdrawn on August 27, 2021, pending a determination by the New Jersey Supreme Court as to Appellant Melody Villanueva-Arroyo's notice of appeal and petition for certification. The State Matter has remained closed since the voluntary stipulation of dismissal was entered on January 16, 2018. In *Melody*, the Superior Court granted summary judgment to PHA, the Appellate Division affirmed, and the New Jersey Supreme Court denied the petition for certification. Def. Mot. Exs. E, F.

Plaintiff initiated this action on July 11, 2022, asserting six counts against Defendants. ECF No. 1. Count One, against all Defendants, alleges Plaintiff was retaliated against for exercising his First Amendment rights to freedom of speech with regard to issues that concern the public, including unlawful practices, policies, and customs of the Defendants. *Id.* at ¶¶ 52-58. Count Two, against Cirilo, alleges Cirilo violated CEPA by taking adverse actions against Plaintiff after he complained about various workplace violations and irregularities. *Id.* at ¶¶ 59-68. Count Three, against PHA, alleges Plaintiff was discriminated against due to his status as a Caucasian in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-12. *Id.* at ¶¶ 69-73. Specifically, Plaintiff asserts minority employees received salary increases, overtime, the ability to join

---

[2] In Count Three of the Complaint, Plaintiff alleges he is Caucasian and has been treated differently than other minority employees of the PHA. Compl. at ¶ 73.

[3] Although the record of those proceedings was not attached to the complaint, this Court can, and will, take judicial notice of the publicly available state court docket, as they provide the relevant background to the present suit. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (explaining that the "court may take judicial notice of a prior judicial opinion"); *see also Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985) ("[T]he official record of the parallel state case is a proper object for judicial notice.").

weekly manager meetings, and bonuses, while Plaintiff was denied such benefits due to his race. *Id.* at ¶¶ 74-77. Count Four alleges all of the Defendants breached Plaintiff's implied employment contract by placing him on leave without an explanation and discriminated against him due to his whistleblowing activities. *Id.* at ¶¶ 78-91. Count Five, against Cirilo, alleges an intentional infliction of emotional distress. *Id.* at ¶¶ 92-96. Finally, Count Six, against PHA, alleges a negligent infliction of emotional distress. *Id.* at ¶¶ 97-102. On October 25, 2022, Defendants moved to dismiss the complaint in its entirety. ECF No. 4. Plaintiff filed his opposition on December 27, 2022, and Defendants filed their reply on January 4, 2023. ECF Nos. 7, 8.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.  DISCUSSION
### A. Stipulation Interpretation

In the underlying State Matter, the parties (excluding Defendant Pamela Mitchell) agreed to a voluntary stipulation of dismissal without prejudice. The stipulation provided Plaintiff the right "to re-file his complaint within sixty (60) days of Notice upon the successful appeal of [the *Melody* matter]." Def. Mot. Ex. A. Defendants argue that the

4

stipulation should be enforced as a dismissal with prejudice because the New Jersey Supreme Court denied the *Melody* plaintiff its petition for certification. Def. Mot. at 16. The denial, Defendants argue, negates a precondition for the right to appeal under the stipulation, that is – a "successful appeal." *Id.* Plaintiff argues that the litigants agreed to no such thing and points to the absurdity of having one case's outcome rely on a separate matter with different facts, claims, and parties. Pl. Opp. at 14-16.

A consensual stipulation between the litigants is interpreted according to general principals of contract construction. *See USX Corp. v. The Penn Cent. Corp.*, 130 F.3d 562, 566 (3d Cir. 1997) (citation omitted). Notwithstanding that the State Matter concerns slightly different parties and different claims, a plain-language reading of the stipulation provides Plaintiff with the right to re-file their complaint in the event of a non-successful appeal. The parties specifically contemplated the possible outcome of a successful appeal, but not an unsuccessful one. Furthermore, the voluntary stipulation of dismissal was without prejudice. As such, the stipulation does not prevent Plaintiff from re-filling its complaint.

### B. First Amendment Retaliation

Defendants argue that Plaintiff has failed to allege any facts demonstrating that PHA enforced a custom or policy that was the moving force behind any purported violation of Plaintiff's constitutional rights and, therefore, Count One should fail as a matter of law. Def. Mot. at 18-20. Plaintiff, in opposition, argues he raised legitimate issues of public concern regarding malfeasance with his superiors that adequately meets the standard of protected activity under First Amendment jurisprudence. Pl. Opp. at 24-25. However, as discussed below, Plaintiff has failed to meet the standards associated with *public employee* speech that is protected under the First Amendment.

In order to set forth a claim of First Amendment retaliation, "a public employee must show that (1) his [activity] is protected by the First Amendment and (2) the [activity] was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the [activity] had not occurred." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (quoting *Dougherty v. Sch. Dist.*, 772 F.3d 979, 986 (3d Cir. 2014); accord *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (articulating the same elements for other types of First Amendment activity, not just speech). "The first factor is a question of law; the second factor is a question of fact." *Gorum*, 561 F.3d at 184 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). With regard to a substantial or motivating factor in the alleged retaliatory action, a causal connection may be demonstrated through either "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If a plaintiff is unable to demonstrate either of these showings, he must establish

that "from the evidence gleaned from the record as a whole[,] the trier of fact should infer causation." *Id.* (internal quotation marks and citation omitted).

As a general rule, a public employee's speech is protected by the First Amendment "when (1) in making it, the employee spoke as a citizen[;] (2) the statement involved a matter of public concern[;] and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill*, 455 F.3d 241-42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418, 689 (2006)). A public employee does not speak "as [a] citizen[]" when he makes a statement "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384-85 (1987) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

### i. Public Employee or Private Citizen

Whether Plaintiff acted as a private citizen or a public employee for purposes of his speech turns on whether he engaged in the relevant activity pursuant to his duties at the PHA. The Supreme Court has held that a public employer may restrict speech that "owes its existence" to the public employee's professional responsibilities without infringing upon that employee's First Amendment rights. *Garcetti*, 547 U.S. at 421-22. Thus, public employees who make statements "pursuant to their official duties" are not private citizens for the purposes of a First Amendment retaliation claim. *Id.* at 421. *See also Lane v. Franks*, 573 U.S. 228 (2014)("Whereas speech [by a public employee] as a citizen may trigger protection [under the First Amendment, the [Garcetti] Court held that 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'")(quoting *Garcetti*, 547 U.S. at 421).

Whether public employees speak pursuant to their official duties is a "practical" inquiry. *Garcertti*, 547 U.S. at 424; *see Foraker v. Chaffinch*, 501 F.3d 231, 241 n.7 (3d Cir. 2007), (stating the "official duties" inquiry is nuanced). According to the Third Circuit, whether a particular incident of speech is made within the particular plaintiff's job duties is a mixed question of law and fact. *Foraker*, 501 F.3d at 240. Specialized knowledge and experience gained from the employee's position can demonstrate the employee's responsibilities or duties in a particular case. *See id.* at 240 (concluding plaintiff's specialized knowledge and experience gained from daily interactions with equipment at issue placed plaintiffs in position to know when problems arose); *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (considering speech part of official duties if arising from specialized knowledge and experience acquired through job); *Cindrich v. Fisher*, 341 F. App'x 780, 788 (3d Cir. 2009) (finding plaintiff's complaints of wrongdoing were based on specialized knowledge and experience acquired through job).

Here, Plaintiff has alleged that he was "responsible for the oversight of maintenance for each of the PHA's residential buildings and was the direct supervisor for the

6

maintenance department workers." Compl. at ¶ 13. Therefore, speech Plaintiff made concerning Mitchell falsifying work order reports (*id.* at ¶ 14), Johnson, his subordinate, leaving work early and without permission (*id.* at ¶ 19), Saar being awarded the construction bid (*id.* at ¶¶ 26-33), poor performance by Saar once they were awarded the construction bid (*id.* at ¶ 36), and fraudulent time recorded by Hector Lora, a maintenance worker, (*id.* at ¶ 38) is considered speech made pursuant to Plaintiff's "official duties." Plaintiff acquired this information through his job, which qualifies as specialized knowledge gained through employment. *See Morris v. Phila. Hous. Auth.*, No. 10-5431, 2011 U.S. Dist. LEXIS 84270, at *30 (E.D. Pa. July 29, 2011). Therefore, Plaintiff's speech is not protected and the Court need not proceed any further in its retaliation analysis. *See Foraker*, 501 F.3d at 243 ("Because... [plaintiffs] were acting pursuant to their job duties when they made their complaints. . ., we need not examine the remainder of the test established by *Pickering* and its progeny.") Defendants' motion to dismiss Count One of the complaint is **GRANTED**.

### C. Supplemental Jurisdiction

Plaintiff's remaining claims allege CEPA violations (Count Two), LAD violations (Count Three), breach of contract (Count Four), intentional infliction of emotional distress (Count Five), and negligent infliction of emotional distress (Count Six). "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *Gibbs*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Counts Two, Three, Four, Five, and Six, pursuant to 28 U.S.C. § 1367(c)(3). However, as discussed *supra*, the stipulation does not prevent Plaintiff from re-filling his state claims and, as this Court declines to exercise supplemental jurisdiction, he may do so in state court.

### D. Sanctions

Finally, Defendants ask this Court to award fees incurred in connection with the motion to dismiss pursuant to Rule 11 of the Federal Rules of Civil Procedure and N.J.S.A.

7

2:15-59.1. because Plaintiff's claims were "patently and objectively frivolous and without any reasonable basis in law or fact." Def. Mot. at 21. The Court will not consider the sanctions request made by Defendants. "[A] motion for sanctions must be made *separately* from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2) (emphasis added).

## IV.    CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendants' motion to dismiss Counts One and **DECLINES** to exercise supplemental jurisdiction on Counts Two, Three, Four, Five, and Six.

An appropriate order follows.

_____
William J. Martini, U.S.D.J.

**Date: April 20, 2022**